IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH FREEMAN                          :

                                        :

        v.                              :   Civil Action No. DKC 07-0892
                                            Criminal No. DKC 03-0194
                                        :

UNITED STATES OF AMERICA                :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this habeas corpus action are numerous motions filed by Petitioner Joseph Freeman: a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 254); a "motion to amend and supplement facts to vacate his entire conviction or alternatively [to] grant the pe[ti]tioner a bond motion" (ECF No. 260) ("first motion to amend"); a "motion to compel an officer of the United States to perform his duty . . . and motion to expand the record" (ECF No. 296) ("second motion to amend"); and a "notice of Petitioner's state conviction being vacated" (ECF No. 306) ("third motion to amend"). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Petitioner's first motion to amend will be

granted; his second and third motions to amend will be denied; and his § 2255 motion, as amended, will be denied.[1]

## I.   Background

By a superseding indictment filed on September 8, 2003, Petitioner Joseph Freeman was charged with participating in a large-scale drug conspiracy.   On June 16, 2004, after a five-week trial, the jury found him guilty of conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846, and four counts of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).

At sentencing, Petitioner was assigned an adjusted offense level of 40 based on the quantity of drugs attributable to him

---

[1] A number of related motions will be summarily denied. Concomitantly with his § 2255 petition, Mr. Freeman filed a motion for release on a personal recognizance bond pending the outcome of this proceeding.  (ECF No. 255).  That motion will be rendered moot by the instant opinion and accompanying order. Petitioner's "motion for enlargement of time to respond to the Government's motion to dismiss" (ECF No. 266) is also moot, insofar as the Government never filed a motion to dismiss. Petitioner's "motion for leave to amend o[r] supplement pleadings" (ECF No. 273) seeks, in effect, the same relief that will be denied on the basis of the motions decided herein. Petitioner's motion for appointment of counsel (ECF No. 274) will be denied because Mr. Freeman has not demonstrated that his petition involves exceptional circumstances.   *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) ("[I]t is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases.").   Finally, the documents requested by Petitioner in correspondence dated July 11, 2008 – which was docketed as a motion for copy work at the expense of the Government (ECF No. 275) – have been provided at various points over the course of the litigation.

and the foreseeable use of a firearm by a co-conspirator. He acknowledged two prior felony convictions in the Circuit Court for Prince George's County, Maryland – specifically, a 1992 conviction for assault with intent to disable and a 1994 conviction for possession of cocaine with intent to distribute – resulting in his designation as a career offender, pursuant to U.S.S.G. § 4B1.1, and placing him in criminal history category VI. Based on these specifications, the sentencing range was from 360 months to life. Petitioner was sentenced to concurrent terms of imprisonment of 360 months to be followed by ten years of supervised release.[2] Judgment was entered on December 15, 2004.

On appeal, Petitioner argued (1) that his sentence violated the Sixth Amendment under the rule announced in *United States v. Booker*, 543 U.S. 220 (2005); (2) that the court erred in permitting evidence of his co-defendants' confessions and certain hearsay statements; (3) that his trial counsel rendered ineffective assistance; (4) that his convictions for possession with intent to distribute violated the Double Jeopardy Clause of the Fifth Amendment; and (5) that there was insufficient evidence of his guilt. The United States Court of Appeals for the Fourth Circuit declined to review Petitioner's ineffective

---

[2] More specifically, Mr. Freeman was sentenced to ten years of supervised release on the conspiracy count and concurrent eight-year terms on the remaining counts.

assistance claim, but affirmed on all other grounds. *See United States v. Freeman*, 167 F.App'x 953 (4th Cir. 2006). The Supreme Court of the United States denied his petition for a writ of *certiorari* on November 13, 2006. *See Freeman v. United States*, 549 U.S. 1042 (2006).

On April 2, 2007, Petitioner filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 254). To the extent this motion is intelligible, it appears to raise the following grounds: (1) Petitioner was "tried and convicted by an unconstitutional Jury Panel, in violation of the law"; (2) "[i]t was 'Fraud Upon The Court' for the Government to prosecute a Possession With Intent to Distribute Drugs"; (3) "[t]he U.S. Sentencing Guidelines [] infringe[d] upon the petitioner's Fifth Amendment Rights"; (4) "[t]his case involve[s] court officials [who] intentionally violated their A.B.A. Canon Codes"; and (5) his trial counsel rendered ineffective assistance. (*Id.* at 5-6, "B").

On June 20, 2007, Petitioner filed his first motion to amend, in which he appears to request the addition of two grounds to his § 2255 petition: (1) the imposition of "an additional Supervised Release Term beyond [Petitioner's] maximum guideline range" constituted "Cruel and Unusual Punishment, unlawful confinement and an Ex Post Facto Clause violation," and

(2) "the statutory scheme under Title 18 U.S.C. [§] 3553 . . . [impermissibly] allow[s] judge[s] to increase a defendant['s] punishment." (ECF No. 260, at 2, 5). On July 17, 2007, the Government filed its opposition to Petitioner's § 2255 petition. (ECF No. 261).

In addition to filing his § 2255 petition in this court, Petitioner also sought certain relief from the Circuit Court for Prince George's County in connection with his 1994 felony drug conviction. On April 11, 2006, Petitioner filed a *pro se*, *ex parte* motion to obtain records and transcripts from the state court proceeding and "for show of cause to collaterally challenge [the] validity of convictions." (ECF No. 297-1, at 11). More than two years later, on September 4, 2008, Petitioner filed a motion for a writ of error *coram nobis* in the Circuit Court, seeking a belated appeal in his 1994 felony drug case. (ECF No. 296-1, at 2). That petition was granted on October 9, 2009, and Petitioner noted an appeal to the Maryland Court of Special Appeals on or about October 30, 2009. (*Id.* at 4).

On June 14, 2010, Petitioner filed his second motion to amend his § 2255 petition, arguing, *inter alia*, that the record should reflect the "newly discovered evidence" indicating that Petitioner is "no longer a career offender" based on the Circuit

Court's October 9, 2009 ruling.  (ECF No. 296, at 9).[3]  On June 29, 2010, the Government filed its response to Petitioner's motion, arguing that any claim relating to Petitioner's state court conviction is barred as untimely.  (ECF No. 297).

In an unpublished opinion issued on June 22, 2011, the Maryland Court of Special Appeals held that the warrantless search yielding the cocaine at issue in Mr. Freeman's 1994 felony drug case violated the Fourth Amendment.  (ECF No. 306-1, at 10-14).  The charges against Petitioner were *nolle prossed* on or about December 9, 2011.  On February 28, 2012, Petitioner filed his third motion to amend that attaches a copy of the Court of Special Appeals' opinion and requests an order that (1) "grant[s] his pending 2255 Habeas Corpus Petition"; (2) "set[s] a court date for a hearing for re-sentencing;" and (3) appoints counsel to represent him.  (ECF No. 306).

## II. Motions to Amend

While the Rules Governing Section 2255 Proceedings do not specifically address the procedure for amendments, "courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion."  *United States v. Pittman*, 209

---

[3] In his motion, Petitioner incorrectly characterized the Circuit Court's October 9, 2009 ruling as evidence that his state court conviction has been vacated.  (ECF No. 296, at 9). As set forth above, that ruling only granted Petitioner the right to seek a belated appeal.  Mr. Freeman's conviction was not vacated until December 9, 2011.

F.3d 314, 317 (4th Cir. 2000).   Under Rule 15(a), a party may amend a pleading once as a matter of course at any time within twenty-one days after service of the response; otherwise, amendment is permissible only with the written consent of the opposing party or upon obtaining leave of the court.   Typically, leave to amend should be freely given "when justice so requires," Fed.R.Civ.P. 15(a)(2), and should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile," *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).

Furthermore, any amendment to a § 2255 petition that seeks to add one or more new claims must also comply with the applicable statute of limitations.   Pursuant to 28 U.S.C. § 2255(f), a federal prisoner must file a motion to vacate, set aside, or correct his sentence within one year of the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by

the Supreme Court and made retroactively
applicable to cases on collateral review; or

(4) the date on which the facts supporting
the claim or claims presented could have
been discovered through the exercise of due
diligence.

Here, Petitioner filed his first motion to amend on June
20, 2007 (ECF No. 260), approximately one month prior to the
Government's response (ECF No. 261).   Thus, he is permitted to
add the two new grounds of relief raised therein as a matter of
course under Rule 15(a).[4]   Moreover, because Petitioner filed the
first motion to amend within one year of the date when judgment
against the Petitioner became final, the newly raised grounds
are timely under 28 U.S.C. § 2255(f)(1).

By contrast, Petitioner's second and third motions to amend
– both of which were filed long after the Government filed its
response and thus can be granted only if the amendment would not
be futile – do not fare as well.   At bottom, both motions seek
to add a new claim to Petitioner's § 2255 petition seeking
modification of Mr. Freeman's sentence based on the vacatur of
his predicate 1994 state court conviction.   Petitioner contends

---

[4]   As noted above, Petitioner's new arguments are that:
(1) the imposition of "an additional Supervised Release Term
beyond [Petitioner's] maximum guideline range" constituted
"Cruel and Unusual Punishment, unlawful confinement and an Ex
Post Facto Clause violation," and (2) "the statutory scheme
under Title 18 U.S.C. [§] 3553 . . . [impermissibly] allow[s]
judge[s] to increase a defendant['s] punishment."   (ECF No.
260).

that his new claim is timely because the vacatur constitutes "a new 'fact' that start[ed] a one-year period in which to seek collateral review" of his federal sentence pursuant to § 2255(f)(4). (ECF No. 296, at 9). The Government rejoins that Petitioner's new claim is barred pursuant to the United States Supreme Court's decision in *Johnson v. United States*, 544 U.S. 295 (2005), because Petitioner did not pursue vacatur with the due diligence required by § 2255(f)(4).[5] The argument advanced by the Government is persuasive.

In *Johnson*, the Supreme Court confirmed that the vacatur of a state court conviction upon which a federal sentence is based constitutes a matter of "fact" for purposes of § 2255(f)(4). *Johnson*, 544 U.S. at 302; *cf. Custis v. United States*, 511 U.S. 485, 497 (1994) (explaining that a federal defendant who successfully challenges a state conviction may "apply for reopening of any federal sentence enhanced by the state sentences").[6] The *Johnson* Court further held that a petitioner's receipt of the vacatur order is the event that triggers the one-

---

[5] Although it was raised in a brief filed prior to the vacatur of Petitioner's 1994 conviction, the Government makes clear that its due diligence argument applies "[r]egardless of the outcome of the belated appeal of his state conviction." (ECF No. 297, at 5).

[6] Petitioner does not contend that any of the limitations periods set forth in § 2255(f)(1)-(3) would be applicable to his proposed new claim for modification of his sentence based on the vacatur. (*See* ECF Nos. 296, 306).

year statute of limitations period set forth in § 2255(f)(4). *Johnson*, 544 U.S. at 307.  To benefit from the new one-year period, however, the petitioner must also demonstrate due diligence in *seeking* the vacatur.  *Id.; cf. United States v. Williams*, 162 F.App'x 254, 257-58 (4th Cir. 2006) (applying *Johnson*'s due diligence standard to the newly discovered evidence exception to the mandate rule).  The obligation to act with due diligence begins on the date of judgment in the petitioner's federal case.  *Johnson*, 544 U.S. at 309 (explaining that, as between the date of indictment, the date of judgment, and the date of finality after direct appeal, using the date of judgment as the trigger for the due diligence obligation represents the best balance between serving finality and minimizing collateral litigation).  Applying these standards, the *Johnson* Court held that the petitioner – who had waited more than three years after judgment to attack the predicate state conviction and offered "no explanation for this delay" – did not act with due diligence and therefore was precluded from relying on § 2255(f)(4).  *Id.* at 311.

Here, Mr. Freeman filed his third motion to amend on February 28, 2012, just shy of three months after the Circuit Court for Prince George's County *nolle prossed* the charges giving rise to his 1994 state court conviction.  Thus, under the first part of *Johnson*'s holding, Petitioner's proposed claim

seeking modification of his sentence based on the vacatur would be well within the one-year statute of limitations period established by § 2255(f)(4).   The inquiry becomes whether Petitioner acted with the appropriate level of diligence in seeking vacatur in the first instance.

Pursuant to *Johnson* and *Williams*, the entry of the federal judgment against Petitioner on December 15, 2004, triggered his obligation to pursue vacatur with diligence.   As indicated by the transcripts from sentencing, Petitioner was aware that the length of his sentence was based, in part, on his 1994 state court conviction.   Thus, "the significance of inaction" (*i.e.*, the significance of *not* challenging his state court conviction) became clear no later than this date. *Johnson*, 544 U.S. at 309; *cf. Williams*, 162 F.App'x at 258 ("The [*Johnson*] Court determined that it was the possibility of an enhanced federal sentence that would cause a defendant to recognize the need to challenge the validity of his prior state convictions.").[7]  Yet Petitioner did not file his motion for a writ of error *coram nobis* seeking a belated appeal of the state court conviction until September 4, 2008, a delay of three years and nine months. As the Government points out, this is far longer than the

---

[7] Indeed, as the Government points out, Petitioner likely became aware of the role that his 1994 state court conviction would play in his sentence as early as May 11, 2004, when he received notice that the Government intended to seek an enhanced penalty based on the conviction.  (ECF No. 297, at 7).

twenty-one month period the *Johnson* Court observed would
constitute an "unreasonabl[e]" delay. *Johnson*, 544 U.S. at 311
(explaining that even if the period of delay was shortened from
three-plus years to 21 months, petitioner "would still have
delayed unreasonably"); *see also In re Milton*, 155 F.App'x 614,
617 (3[d] Cir. 2005) (petitioner did not display due diligence
because "[n]othing further occurred in th[e state court] case
until counsel was appointed on October 3, 1994 - 22 months after
[petitioner's] federal sentence was imposed"); *Hamilton v.
United States*, Nos. CV408-138, CR405-121, 2008 WL 4533692, at *2
(S.D.Ga. Oct. 6, 2008) ("The Court finds that [petitioner's] 21-
month delay in filing his state habeas petition was
unreasonable.").

In a footnote, the *Johnson* Court noted that where "the
facts underlying the challenge to the state-court conviction
might themselves not be discoverable through the exercise of due
diligence until after the date of the federal judgment," the due
diligence obligation could be triggered at a later point.
*Johnson*, 544 U.S. at 310 n. 8.  This exception is not applicable
here as there is nothing in the record demonstrating that
Plaintiff pursued vacatur based on information that did not
become discoverable until some point after the federal judgment.
According to the transcript from the hearing on the motion for a
writ of error *coram nobis*, Petitioner sought a belated appeal of

his 1994 conviction based on his state court trial counsel's failure to note an appeal, despite Petitioner's express request for him to do so. (*See* ECF No. 297-2, at 3). Nothing in the record indicates that Petitioner mistakenly believed that his state court counsel *had* noted an appeal. Even if Petitioner did harbor such a mistaken belief, however, his state court attorney's error was certainly discoverable as of the date of the federal judgment. Likewise, according to the opinion of the Maryland Court of Special Appeals that led to vacatur (ECF No. 306-1), Petitioner's substantive challenge to the 1994 conviction did not rely on any facts that were undiscoverable at the time of the federal judgment. Instead, Petitioner argued that the trial court committed legal error by (1) upholding the constitutionality of the inventory search yielding the cocaine, and (2) allowing the cocaine to be introduced into evidence despite the prosecution's failure to establish proper chain of custody. (*Id.* at 1). Hence, because Petitioner's challenge to the state court conviction did not depend on facts that were undiscoverable at the time of the federal judgment, the exception contemplated by *Johnson* cannot be relied on here.

As the Government concedes, Petitioner did file a *pro se* motion to obtain records and transcripts relating to his state court proceedings on April 11, 2006, approximately seventeen months after entry of judgment against him in the federal

13

proceedings. (ECF No. 297, at 7; ECF No. 297-1, at 11). Per the state court docket, that motion expressly referenced challenging the validity of the state court convictions. (*Id.*) After the state court responded by requesting payment for the documents, Petitioner filed a second motion on July 6, 2006, seeking to be excused from paying the costs due to his indigence. (ECF No. 297-1, at 12). Petitioner did not file his motion for a writ of error *coram nobis* until September 4, 2008, twenty-six months later.

Similar facts were presented in *Williams*, where the defendant received his federal sentence in August 1999 but waited until April 2003 to seek modification of his predicate state court convictions, a period of three-and-a-half years. 162 F.App'x at 260.[8]  The Fourth Circuit noted that the defendant

---

[8] Although *Williams* did not involve a § 2255 petition, the Fourth Circuit's holding is relevant to whether Mr. Freeman diligently sought vacatur here. In *Williams,* after the defendant's second appeal, the Fourth Circuit vacated the sentence imposed by the trial court and remanded with explicit and specific instructions regarding re-sentencing, including how the defendant's prior state court drug convictions should affect the sentencing range. 162 F.App'x at 255. Just prior to re-sentencing in the district court, the defendant sought and received an order from the state court retroactively modifying his predicate convictions, which were changed from convictions for the sale of crack cocaine to convictions for the possession of crack cocaine. *Id.* In determining whether the district court erred in refusing to deviate from the Fourth Circuit's remand instructions based on the modified convictions, the *Williams* court considered the applicability of the "new evidence" exception to the mandate rule and held that *Johnson*

took "some limited action" in connection with challenging his state convictions in early 2000 – approximately five months after entry of the federal judgment – by requesting transcripts from the earlier proceedings. *See id.* After his requests were denied in April 2000, the petitioner's "efforts then came to a halt, to finally be revived in April 2003," three years later. *Id.* The Fourth Circuit concluded that "requesting a transcript (which, so far as the record reveals, was not necessary to obtaining the modification of the state convictions) and then abandoning the effort for three years" does not amount to the exercise of due diligence. *Id.; see also In re Milton*, 155 F.App'x at 617 ("Although a request for a transcript may be a preliminary step toward challenging a conviction, the request by itself does not show due diligence.").

Likewise here, it cannot be said that Petitioner's efforts to obtain the state court records amounts to the due diligence required by § 2255(f)(4) and *Johnson*. Based on the present record, the state court documents requested were not necessary for Petitioner to obtain either the belated appeal of the conviction or the ultimate vacatur of the conviction. Indeed, the transcript from the hearing on the motion for a writ of error *coram nobis* makes clear that the Circuit Court granted the

---

was instructive because, like § 2255(f)(4), that exception requires the exercise of due diligence. *Id.* at 256-57.

writ based solely on Petitioner's representation – which was *not* corroborated by anything in the state court docket – that his trial counsel ignored his request to pursue an appeal. (*See* ECF No. 297-2, at 4-5).   Likewise, the Maryland Court of Special Appeals declared the cocaine-yielding inventory search to be unconstitutional based on its interpretation of a local ordinance that was not cited by either party in the proceedings below or on appeal. (*See* ECF No. 306-1).   Moreover, Petitioner waited seventeen months after sentencing to seek the records, far longer than the five-month period between the federal judgment and the requests for transcripts at issue in *Williams*. Finally, as in *Williams*, Petitioner's efforts to challenge his state court conviction "came to a halt" after July 2006, as he waited an additional 26 months to file his motion for a writ of error *coram nobis*.

Of course, in evaluating due diligence, the individual circumstances of the petitioner should be considered, "including the practical realities of the petitioner's confinement." *United States v. Longshore*, 644 F.Supp.2d 658, 662 (D.Md. 2009) (citing *Jones v. United States*, 20 F.App'x 520, 523 (7th Cir. 2001)).   Importantly, however, it is the Petitioner's burden to demonstrate due diligence.   *McKinnon v. United States*, Civ. No. CCB-12-179, Crim. No. CCB-08-049, 2012 WL 2564723, at *2 (D.Md. June 29, 2012).   Here, Petitioner never directly responded to

16

the Government's arguments regarding due diligence and never provided any explanation of his delay in seeking vacatur.[9]   That Petitioner is proceeding *pro se* is not sufficient, in and of itself, to excuse his lack of diligence.   *Johnson*, 544 U.S. at 311 (rejecting "pro se representation alone or procedural ignorance as an excuse for prolonged inattention" to challenging predicate state court convictions); *McKinnon*, 2012 WL 2564723, at *2 (the petitioner's "lack of familiarity with the law and poor advice from other inmates" was insufficient to establish due diligence under § 2255(f)(4)).

Based on the binding precedent set forth in *Johnson* and *Williams*, Petitioner's unexplained delay in seeking to overturn the 1994 state court conviction cannot be deemed reasonable, precluding Petitioner's reliance on § 2255(f)(4).[10]   Hence,

---

[9] In a handwritten affidavit filed with his original § 2255 motion, Petitioner avers that he "told [his federal court trial counsel] to challenge his state conviction before we went to [] federal trial" and that his federal trial counsel responded to this request by stating "that he needed more money."   (ECF No. 254).   Even liberally construed, this statement does not offer any explanation that would excuse Petitioner's lack of diligence because it does not give rise to an inference that Petitioner waited to seek vacatur on his own because of a mistaken belief that his federal trial counsel was seeking such relief on his behalf.   To the contrary, the affidavit establishes that Petitioner knew his federal trial counsel would *not* challenge the state court conviction absent additional payment.

[10] Although Petitioner does not explicitly argue that equitable tolling should apply to his proposed new claim, such an argument also would be futile.   The Supreme Court has held that a petitioner is "entitled to equitable tolling only if he

Petitioner's second and third motions to amend will be denied because the proposed new claim relating to the vacatur of his predicate state court conviction would not be timely.

## III.    Motion to Vacate

### A.    Standard of Review

Title 28, § 2255, requires a petitioner to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  A *pro se* petitioner, such as Mr. Freeman, is, of course, entitled to have his arguments reviewed with appropriate consideration.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151-52 (4th Cir. 1978).  Where, however, a § 2255 petition, along with the files and records of the case, conclusively shows that the petitioner is not entitled to relief, a hearing on the motion is

---

shows (1) that he has been pursuing his rights *diligently*, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland v. Florida*, --- U.S. ----, 130 S.Ct. 2549, 2562 (2010) (internal quotations omitted) (emphasis added); *see also United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000) (equitable tolling should be "sparingly granted").  As explained above, Petitioner has not demonstrated the diligent pursuit of his rights in connection with challenging his state court conviction and therefore is not entitled to equitable tolling.

unnecessary and the claims raised therein may be dismissed summarily. *See* 28 U.S.C. § 2255(b).

### B.   Analysis

The grounds raised in Petitioner's § 2255 motion – as supplemented by the first motion to amend – are without merit. As to most of these claims, Mr. Freeman does little more than broadly assert vague allegations of error – *e.g.*, "petitioner was tried and convicted by an unconstitutional Jury Panel, in violation of the law" – which he then supports with wholly inapposite legal principles – *e.g.*, that the above error was "a violation of the 'Separation of Power' doctrine for a trial judge to 'delegate' his or her 'Judicial Power' to 12 citizens on a Jury Panel, to make the final resolution . . . on petitioner's guilty verdict, without causing a 'Miscarriage of Justice.'"  (ECF No. 254, at 5).  Deciphering the meaning of such arguments is, at best, guesswork.  Nevertheless, all of these claims generally fall into one of two categories: (1) those that are procedurally barred by virtue of the fact that they were either not raised or previously decided on direct appeal, and (2) bald allegations of ineffective assistance of trial counsel.

### 1.   Procedural Default

The ordinary rule is that "an error can be attacked on collateral review only if first challenged on direct review."

*United States v. Harris*, 183 F.3d 313, 317 (4th Cir. 1999); *see also United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) ("[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal") (internal quotation marks and citation omitted).   Where a petitioner has procedurally defaulted a constitutional claim by failing to raise it on direct appeal, it may be raised for the first time in a § 2255 motion only upon a showing of either "cause and actual prejudice resulting from the errors of which he complains," or a demonstration that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999).

A showing of cause for a procedural default "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493.   To establish actual prejudice, the petitioner must show that the error worked to his "actual and substantial disadvantage," rather than merely creating a possibility of prejudice.   *Murray v. Carrier*, 477 U.S. 478, 494 (1986).   A petitioner demonstrates that a miscarriage of justice would result if the court does not consider a procedurally defaulted claim by showing "actual innocence by clear and convincing evidence" – in other words, "actual factual innocence

of the offense of convictions, *i.e.*, that petitioner did not commit the crime of which he was convicted[.]" *Mikalajunas*, 186 F.3d at 494.

Here, Petitioner was required to raise the following claims on direct appeal, if at all: (1) that the jury panel was allegedly "unconstitutional"; (2) that "it was fraud on the court for the government to prosecute [him for] possession with intent to distribute drugs" because the jury could not determine his "mental intent" to distribute drugs; (3) that the sentencing guidelines "infringe[d] upon [his] Fifth Amendment [r]ights"; (4) that "court officials intentionally violated" ethical principles because the court was "swayed" by "bad provisions of the law"; (5) that the imposition of concurrent terms of supervised release constituted "Cruel and Unusual Punishment, unlawful confinement and an Ex Post Facto Clause violation"; and (6) that "the statutory scheme under Title 18 U.S.C. [§] 3553 . . . [impermissibly] allow[s] judge[s] to increase a defendant['s] punishment." To the extent that these claims were not raised on direct appeal, Petitioner bears the burden of showing either cause and actual prejudice resulting from the alleged error, or that he is actually innocent of the crimes for which he stands convicted. He had made no such showing here.

It appears, moreover, that at least one of these issues was addressed by the Fourth Circuit. On appeal, Petitioner

challenged the "the sufficiency of the evidence, claiming there was no tangible evidence linking him to the charges and the witnesses against him were not credible." *Freeman*, 167 F.App'x at 954.  The appellate court determined that this argument was "without merit," specifically finding that "there was sufficient evidence to establish Freeman possessed with intent to distribute at least 500 grams of cocaine on four separate occasions as a result of evidence of his trips to California." *Id.* at 955.  Petitioner's second ground for relief in the instant motion may be read as a challenge to the sufficiency of evidence of his intent to distribute cocaine.  To the extent that this argument was addressed on direct appeal, it is not cognizable in his § 2255 motion. *Johnson v. United States*, No[s]. Civ. PJM-08-2623, Crim. PJM 02-0178, 2010 WL 2573212, at *2 (D.Md. June 22, 2010) ("petitioner may not, through a habeas petition, relitigate an issue previously rejected on direct appeal") (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).

In any event, each of the six grounds set forth above has been procedurally defaulted. *See United States v. Konsavich*, Crim. No. 5:05-CR-00019, Civ. No. 5:08-CV-80100, 2009 WL 1759555, at *10 (W.D.Va. June 19, 2009) ("[C]laims [that] were either not raised on direct appeal or raised and decided by the Court of Appeals . . . are procedurally defaulted.").  Because

Petitioner fails to show either actual innocence or cause and prejudice, the merits of these grounds will not be reached.

### 2.    Ineffective Assistance of Counsel

The sum and substance of Petitioner's ineffective assistance claims consists of what appears to be an excerpt from an unrelated motion setting forth the relevant legal standard and the following six allegations:

> [1]. Trial counsel [] failed to challenge the indictment[;]
>
> [2]. Trial counsel [] failed to properly file adequate pretrial motions[;]
>
> [3]. Trial counsel [] failed to challenge the Constitutionality of the U.S. Sentencing Guideline[s], swayed judge's decision to violate the Double Jeopardy Clause[;]
>
> [4]. Trial counsel [] failed to object to the court imposing a consecutive sentence of Supervised Release Term[;]
>
> [5]. Trial counsel [] failed to argue[] the unconstitutionality of the Grand Jury and Jury Panel, as well as a tainted indictment[;]
>
> [6]. Trial counsel [] engage[d] in[] a "Fraud Upon The Court" by allowing the Government to expose the defendant to a miscarriage of justice.

(ECF No. 254, at "B").

These claims are governed by the well-settled standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).   Pursuant to *Strickland*, the petitioner must

show both (1) that the performance of his attorneys fell below an objective standard of reasonableness and (2) that he suffered actual prejudice.   *See Strickland*, 466 U.S. at 687.   To demonstrate actual prejudice, he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

In applying *Strickland*, a strong presumption exists that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *See id*. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).   The reasonableness of attorney conduct must be judged "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted even had the attorney's performance been deficient.  *See Strickland*, 466 U.S. at 697.

As to the first allegation, Petitioner has not suggested the manner in which his counsel should have challenged the indictment.   Even if Mr. Freeman could show deficient performance, he has made no showing of prejudice, nor could he under the circumstances of this case.   *See United States v.*

24

*Mechanik*, 475 U.S. 66, 73 (1986) ("[T]he petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation."); *see also White v. United States*, Civ. No. WDQ-06-2875, Crim. No. WDQ-03-0375, 2007 WL 2461051, at *5 (D.Md. Aug. 24, 2007) ("Any error in [the petitioner's] grand jury proceedings was rendered harmless by the trial jury's determination of his guilt." (citing *Mechanik*)).

Similarly, with respect to the second allegation, Petitioner has not identified any pretrial motions that his counsel should have filed. Nor has he alleged, much less shown, a "reasonable probability," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner's third allegation – *i.e.*, that his counsel rendered ineffective assistance by failing to challenge the constitutionality of the sentencing guidelines, thereby resulting in a Double Jeopardy violation – appears to relate to a claim specifically considered and rejected by the Fourth Circuit. Because this claim is meritless, his trial counsel's representation could not have been constitutionally deficient for failing to raise it. *See Baker v. Corcoran*, 220 F.3d 276, 293 n. 15 (4th Cir. 2000).

The fourth ground, that trial counsel failed to object to the imposition of consecutive terms of supervised release, is belied by the judgment of conviction, which reflects that Petitioner was sentenced to concurrent terms of supervised release.

Petitioner has not identified the basis upon which his counsel should have challenged the constitutionality of the grand or petit juries, his fifth allegation of ineffective assistance.   Thus, he has not shown any deficiency in performance or prejudice resulting therefrom.

Finally, his sixth allegation – that his counsel somehow engaged in "fraud upon the court" by "allowing the Government to expose the defendant to a miscarriage of justice" – is similarly undeveloped and finds no support in the record.

## IV.  Conclusion

For the foregoing reasons, Petitioner's first motion to amend will be granted; his second and third motions to amend will be denied; and his motion to vacate, set aside, or correct his sentence (as amended) will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.   A certificate of appealability is a "jurisdictional prerequisite" to an appeal

26

from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal quotation marks omitted). Petitioner does not satisfy the above standard, and a certificate of appealability will not issue.

A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge