IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| JOSEPH CARTER FREEMAN | : |
|  | : |
| v. | : |
|  | Criminal No. DKC 03-194-2 |
| UNITED STATES OF AMERICA | : |
|  | : |

**MEMORANDUM OPINION**

Joseph Carter Freeman, Petitioner, has several matters pending, two filed by counsel, a petition pursuant to 28 U.S.C. § 2255, (ECF No. 363), and a motion for reduction of sentence pursuant to the First Step Act, (ECF No. 397), and one filed *pro se*, an earlier motion for reduction of sentence pursuant to the First Step Act. (ECF No. 388).  The first is stayed at the parties' request. (ECF No. 381).  The second two are ready for resolution.

Joseph Carter Freeman is serving concurrent sentences of 360 months imprisonment for his convictions for conspiracy to distribute and possess with intent to distribute 5 kilos or more of cocaine, and 50 grams or more of cocaine base (count one) and possession with intent to distribute 500 grams or more of cocaine (counts two, three, five, and six).  Ten years of supervised release are to follow.  He seeks a reduction to 240 months imprisonment pursuant to Section 404 of the First Step Act.  He asserted that such a reduction would make him eligible for release

a few months after the filing of the motion.  (ECF No. 397).  The Government opposes the request.  (ECF No. 408, Sealed Exhibit A, ECF No. 410).[1]  Mr. Freeman filed a reply, (ECF No. 412), and supplements (ECF Nos. 414, 436, 439, 442, and 447).  For the following reasons, the motion will be GRANTED in part and DENIED in part.

Mr. Freeman was sentenced on December 12, 2004, for conduct occurring before June 2003.  The Fair Sentencing Act of 2010 was signed into law on August 3, 2010.  It did not apply to those sentenced before its effective date.  The First Step Act was adopted in 2018, and provides that, notwithstanding *Dorsey v. United States,* 567 U.S. 260 (2102), certain persons may seek a retroactively reduced sentence.  Section 404(b) provides: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  Section 404(a) defines a "covered offense" as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed before August 3, 2010.  There are limitations, however, outlined in Section 404(c):

> No court shall entertain a motion made under this section
> to reduce a sentence if the sentence was previously
> imposed or previously reduced in accordance with the

---

[1]  The Motion to Seal this exhibit, (ECF No. 409), is GRANTED.

amendments made by sections 2 and 3 of the Fair
Sentencing Act of 2010 or if a previous motion made under
this section to reduce the sentence was, after the date
of enactment of this Act, denied after a complete review
of the motion on the merits.

Section 2 of the Fair Sentencing Act altered the quantity
threshold for the mandatory minimums in 21 U.S.C. § 841, and
Section 3 eliminated the mandatory minimum for simple possession.
In *United States v. Wirsing*, 943 F.3d 175, 185-86 (4ᵗʰ Cir. 2019),
the United States Court of Appeals for the Fourth Circuit concluded
that a person is eligible if he was sentenced under 21 U.S.C. §
841(a) and (b)(1)(A)(iii) or (B)(iii). In *United States v.
Gravatt*, 953 F.3d 258, 262-64 (4ᵗʰ Cir. 2020), the Fourth Circuit
held that a defendant remains eligible under the Act even if the
conspiracy for which he was convicted encompassed distribution of
both cocaine powder and crack cocaine.

The motion recites that, at the time it was filed, Mr. Freeman
had already served nearly 17 years, that he would no longer qualify
as a career offender, has used his time in the BOP productively,
is an involved parent, has family awaiting his return home, and
has a place to stay. Initially filed in the midst of the public
health emergency, the motion also relies on the conditions in his
BOP facility.

He also argues that the 20-year sentence he proposes is
sufficient to act as a deterrent and more appropriately
approximates the sentence he would receive for a similar offense

3

today, particularly in light of the different practices, and legal standards for invocation of § 851 enhancements.

The Government, in opposing Defendant's motion, focuses on the offense conduct, argues that he is not eligible for consideration, and moreover, not deserving of reduction. As recognized by the Government, its position on eligibility has been rejected by the Fourth Circuit, *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020). The Government argues that his guideline range is unchanged by the First Step Act due to the applicability of the career offender guideline, despite Mr. Freeman's argument that he is no longer a career offender.

Since the briefing by the parties, the Supreme Court and the Fourth Circuit have clarified the process for evaluating motions raising career offender (or other guideline changes or errors). The Supreme Court, in *Concepcion v. United States*, 142 S.Ct. 2389, 2404, and n.6 (2022), held that "a district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act," but "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." As then explained by the Fourth Circuit:

> In other words, *Concepcion* instructs district courts exercising their discretion under the First Step Act to proceed in two steps. First, they must recalculate the

> movant's Guidelines range "only to the extent it adjusts for the Fair Sentencing Act." *United States v. Shields*, 48 F.4th 183, 192 (3d Cir. 2022); *see also Concepcion*, 142 S. Ct. at 2402 n.6, 2403 n.8. Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence. *Concepcion*, 142 S. Ct. at 2396, 2402 n.6.

*United States v. Troy*, 64 F.4th 177, 184 (4th Cir. 2023). *See also, United States v. Smith*, --- F.4th ---, 2023 WL 4938416 (4th Cir. Aug. 3, 2023).

At sentencing, the adjusted offense level was 40 based on the quantity of drugs (27 kilos of powder=5400 kilos of marijuana, and 1.5 kilos of crack=30,000 kilos of marijuana for a total equivalent of 35,400 kilos of marijuana) (level 38) and the foreseeable use of a firearm by a co-conspirator adding two levels. Mr. Freeman acknowledged two prior felony convictions in the Circuit Court for Prince George's County, Maryland – specifically, a 1992 conviction for assault with intent to disable and a 1994 conviction for possession of cocaine with intent to distribute resulting in his designation as a career offender, pursuant to U.S.S.G. § 4B1.1, and placing him in criminal history category VI. The career offender offense level would have been 37, below the otherwise calculated offense level. Based on these specifications, the sentencing range was from 360 months to life. Since then, the 1994 conviction has been vacated and the charge nolle prossed. (ECF No. 306-1, at 10-14.)

The benchmark guidelines, calculated with the Fair Sentencing Act amendments, "specifically, Amendment 750, which lowered the base offense levels associated with different quantities of crack cocaine, and Amendment 759, which made those levels retroactive. *See* U.S. Sent'g Guidelines Manual app. C, amend. 750, 759 (U.S. Sent'g Comm'n 2011)," *United States v. Smith*, No. 21-6829, 2023 WL 4938416, at *3 n. 3 (4th Cir. Aug. 3, 2023), would result in an offense level of 38.  Using the conversion table in effect in 2011, the 27 kilos of powder still convert to 5400 kilograms of marijuana and the 1.5 kilos of crack equate to 5,356.50 kilograms, resulting in a total of 10,756, or level 36.  Adding the two levels for the firearm results in a level 38. (The career offender guideline is still lower, at 37.)  At criminal history IV, without career offender enhancement, the range is 324 to 405 months, but with career offender enhancement at criminal history VI, the range still would be 360 months to life.[2]

Mr. Freeman is eligible for consideration.  Technically, the guidelines remain the same even with the Fair Sentencing Act

---

[2] Today, the converted drug weight would result in a level 34, with two levels added for the firearm, and an adjusted offense level of 36.  At criminal history IV, the range would be 262-327 months.  Petitioner contends his quantity driven base offense level would be 32, but he doesn't state how that was derived.  Unless Congress acts by November 1, 2023, the criminal history category would be lower as of that date because the two points for being on probation would not be applied.  As noted before, one conviction has been expunged.

amendments (if the career offender enhancement applies).  As noted, without the career offender enhancement, the guidelines would be lower.  There have been other changes to sentencing jurisprudence and practices.  Some of his co-defendants have received sentence reductions, either judicially or through executive clemency.  Mr. Freeman has comported himself well in the Bureau of Prisons, earning his GED, working, and participating in educational and vocational programming, as well as taking mental health and drug treatment.  He has a solid re-entry plan and family and community support.  Mr. Freeman has been incarcerated since July 14, 2003, and during some of that time, due to the pandemic, that incarceration has been more onerous than normal.  Considering all of the circumstances in this case, a sentence of time-served is sufficient to serve all the goals of sentencing.  Accordingly, the sentence will be reduced to time-served plus fourteen days.  The additional fourteen days are provided for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release.  The defendant will be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel.  There will be no delay in ensuring travel arrangements are made.  If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's

safe release, the parties will notify the court immediately and show cause why the stay should be extended.

An amended judgment and order will be issued.  The previously imposed conditions of supervised release are unchanged.

                                        /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge